**Joseph W. SHEW, Jr., et al.**

**v.**

**Michael A. BAWGUS, et al.**

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

Nov. 9, 2006 Session.

Feb. 20, 2007.

Permission to Appeal Denied by Supreme Court June 25, 2007.

James R. Wheeler, Jonesborough, Tennessee for the Appellants, Michael A. Bawgus, C. Alan Longmire, and Carolyn Lindsey King.

Rick J. Bearfield, Johnson City, Tennessee for the Appellees, Joseph W. Shew, Jr., Nyoka Shew, Kenneth L. Lewis, and Shirley A. Lewis.

## OPINION

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and SHARON G. LEE, JJ., joined.

Joseph W. Shew, Jr., Nyoka Shew, Kenneth L. Lewis, and Shirley A. Lewis ("Plaintiffs") sued Michael A. Bawgus, C. Alan Longmire, and Carolyn Lindsey King ("Defendants") seeking, in part, a declaratory judgment holding that an easement over Defendants' properties is thirty feet wide, or in the alternative, a judgment that the easement in its present state is unsafe and, therefore, Plaintiffs are entitled to a prescriptive easement thirty feet in width. After a bench trial, the Trial Court entered a Judgment finding and holding, *inter alia*, that the easement in question is thirty feet in width, or in the alternative, that an easement by prescription has been acquired by continued hostile, open, actual, and exclusive use of the easement by Plaintiffs and their predecessors in title since the establishment of the driveway within the easement in approximately 1950. Defendants appeal to this Court. We reverse.

### Background

As is the case with many property disputes, the chains of title for the properties involved in this lawsuit involve numerous conveyances. As the details to most of these conveyances are not relevant to the issues involved on appeal, we will attempt to simplify the background facts as best as possible.

Each of the parties involved in this lawsuit owns property that once was part of a single tract deeded to L.L. Taylor in 1927. In 1932, L.L. Taylor and his wife deeded a portion of their property consisting of ap-

proximately 4.64 acres to E.S. Taylor ("Servient Estate"). The deed from L.L. Taylor and his wife to E.S. Taylor provided, in pertinent part: "The party of the first part reserves the right of outlet over said property."

Over the years, the Servient Estate was conveyed several times and each deed recited that L.L. Taylor reserved a right of outlet over the Servient Estate. In 1951, the owners of the Servient Estate, E.J. and Kathleen L. Shew, conveyed the Servient Estate to J.A. and Flossie Shew. This deed did not specifically contain the recitation regarding the right of outlet.

By Clerk's Deed, R.B. and Georgia Lee Bawgus acquired the Servient Estate in 1969. In 2002, Georgia Lee Bawgus, a widow, conveyed a portion of the Servient Estate to Michael A. Bawgus. The remainder of the Servient Estate was conveyed to C. Alan Longmire and wife, Carolyn Lindsey King. Thus, title to separate portions of the Servient Estate now rests in Michael A. Bawgus and in C. Alan Longmire and Carolyn Lindsey King.

As for the remainder of the single tract owned by L.L. Taylor in 1927, L.L. Taylor, a widower, conveyed approximately 45.3 acres ("Dominant Estate") to Clarence W. and Estelle Taylor in 1952. As was the case with the Servient Estate, title to the Dominant Estate was conveyed numerous times over the years.

The Dominant Estate was divided in 1981, pursuant to a divorce decree involving the then owners, Clarence W. Taylor and Lillian K. Taylor. In 1992, Lillian K. Taylor conveyed her portion of the Dominant Estate to Stephen J. Barcik, III. This 1992 deed, provides, in pertinent part:

The Party of the First Part does by these presents further grant and convey unto the Party of the Second Part, his heirs and assigns, a perpetual easement or right-of-way over and across the ex-isting joint driveway and right-of-way (30 feet in width) leading from Burton France Road to and along the westerly line of the property herein conveyed as shown by said plat prepared by Hale Surveys mentioned hereinabove. Neither the Party of the First Part, her heirs and assigns, nor the Party of the Second Part, his heirs and assigns, shall block or obstruct said common driveway or right-of-way from Burton France Road as shown by said plat. The property conveyed hereinabove is also conveyed subject to said joint non-exclusive driveway along the westerly line of the property hereinabove conveyed as shown by said plat.

A portion of the Dominant Estate owned by Clarence W. Taylor was, after several interim conveyances, conveyed to Stephen J. Barcik in 1993. This 1993 deed contains a description that states, in pertinent part: "PARCEL IV: BEGINNING at a point in the westerly boundary of a 30′ wide driveway, ...." In 1994, Stephen J. Barcik conveyed his portion of the Dominant Estate to the current owners, Joseph W. Shew, Jr. and Nyoka R. Shew.

The remainder of the Dominant Estate that was owned by Clarence W. Taylor was conveyed to the current owners, Kenneth L. and Shirley A. Lewis, in 2002. Thus, title to a portion of the Dominant Estate rests in Joseph W. Shew, Jr. and Nyoka Shew, and a portion rests in Kenneth L. and Shirley A. Lewis.

The easement in question in this lawsuit ("the Easement") contains a driveway ("the Driveway") that runs between the Lewis and Shew properties, or the Dominant Estate, and continues on the land where the Bawgus and Longmire/King properties, or the Servient Estate, join and gives access to Burton France Road. Plaintiffs sued Defendants seeking a declarato-

ry judgment holding that the Easement is thirty feet in width, or in the alternative, a judgment that the Easement in its present state is unsafe and, therefore, the Plaintiffs are entitled to a prescriptive easement thirty feet in width. The case was tried without a jury.

Attorney D.R. Beeson, III testified as a expert for Plaintiffs. Mr. Beeson opined that the Easement was created in the 1932 deed from L.L. Taylor and his wife to E.S. Taylor, which provided, in pertinent part: "The party of the first part reserves the right of outlet over said property." The specific parameters of the Easement were not defined in this deed. Mr. Beeson opined that the Easement encumbers the entire 4.64 acre Servient Estate.

A 2001 plat ("2001 Plat") prepared by surveyor Charles T. Johnson shows the Easement as a ten-foot wide gravel lane for ingress and egress. The 2001 Plat declares that it was prepared to establish the boundaries when Georgia Bawgus split her property into two tracts. Mr. Beeson testified that the 2001 Plat was a re-plat and that the original plat also showed the Easement as a ten-foot wide gravel lane for ingress and egress. Mr. Beeson agreed that there are no other references to the width of the Easement that exist within the chain of title to the Servient Estate. The references to a thirty-foot wide driveway all appear within the chain of title to the Dominant Estate and first appeared long after the Servient Estate was severed from the Dominant Estate and the Easement was created.

Mr. Beeson agreed that the makers of the deeds within the chain of title to the Dominant Estate:

couldn't expand the easement by a simple recitation. I don't know whether the draftsman—my best guess is that the draftsman was referring to a survey upon which was located thirty feet in width. And again I don't have any basis or any evidence as to the basis of that.

Mr. Beeson noted that a reference was made in the 1981 Quitclaim Deed between Lillian K. Taylor and Clarence W. Taylor to a 1981 survey prepared by George F. Ritchie, but admitted that this deed appears within the chain of title to the Dominant Estate, not the Servient Estate. When asked about the reference to a "joint driveway and right-of-way (30 feet in width) ..." that appears within this 1981 Quitclaim Deed, Mr. Beeson testified that he does not know the source of the grant of such a 30–foot right-of-way.

Mr. Beeson also was questioned about the reference to the 30–foot driveway that exists in the 1993 deed from Ronald B. and Regan H. Soderberg to Stephen J. Barcik. Mr. Beeson testified: "The point that it's referring to would be within what is now the Lewis tract or even possibly—well, the line and separation between the Lewis and the Shew tracts [that comprise the Dominant Estate]." Mr. Beeson agreed that the former owners of the Lewis and Shew properties could have agreed to establish a joint driveway between their properties of any width and "[t]he owners of the 4.64–acre tract [the Servient Estate] would not have had to have been involved in that establishment, that's true."

Mr. Beeson was questioned about a 1992 survey prepared by Joe A. Hale for Stephen J. Barcik, which identifies the owner of a portion of the Servient Estate as Jack Hill. Mr. Beeson testified that the reference to Jack Hill was erroneous as the Servient Estate was owned at that time by R.B. and Georgia Lee Bawgus. Jack Hill's deed, which is listed on the Hale survey as appearing in Deed Book 424, Page 163, does not appear anywhere within the chain of title to the Servient Estate. Mr. Beeson testified that he did not look

for the correct location of the Jack Hill tract.

Gary Tysinger, a registered engineer, testified as an expert for Plaintiffs. Mr. Tysinger examined the Easement and measured it is as being approximately 335 feet from Burton France Road to the Shew and Lewis properties. The Driveway currently is gravel covered. At its most narrow point, the Driveway is approximately nine feet wide. The Driveway meanders and it is not possible to see from one end of the Driveway to the other.

Mr. Tysinger testified that it would be impossible for one vehicle to pass another at the Driveway's most narrow point. Mr. Tysinger further testified that, in fact, there is no place along the existing Driveway where vehicles could pass one another. Mr. Tysinger testified that for two cars to pass one another, a surface of 18 to 20 feet was necessary and that farm equipment would need more space than that to pass. Mr. Tysinger testified that an additional shoulder area would be needed beyond the 18 to 20 feet of actual road width in order to stabilize the road surface and maintain grass, fences, etc. The existing Driveway does not have a shoulder.

Mr. Tysinger prepared a proposal that calls for 20 feet of traveling surface for the Driveway and an additional six feet of shoulder space. An additional two feet of width on each side would be necessary to account for slope. Mr. Tysinger's plan, thus, calls for a total of 30 feet of width. Mr. Tysinger admitted that his plan calling for a 30-foot wide Driveway was one of two plans that he prepared and that he prepared another plan calling for only 16 feet of width. Mr. Tysinger testified that the 16-foot width plan: "was an option that presents a very limited way of trying to move the traffic through there. It does not completely satisfy all the issues by the simple fact that the 16 feet, it would be

hard to pass on the culvert unless we extended the culvert." Under Mr. Tysinger's plans, fences and trees on both sides of the driveway would need to be removed, which would expose the Longmire/King backyard to view. Mr. Tysinger admitted that under his 30-foot width plan, the Driveway would be wider than Burton France Road is in some places. Mr. Tysinger admitted that the difference between his two plans is a difference in the travel surface of the Driveway of only two to four feet. The travel surface in the 30 foot plan is 20 feet wide and the travel surface in the 16 foot plan is 16 feet wide.

Adam Garland, Sr., the assistant chief with the Embreeville Volunteer Fire Department ("Embreeville Fire Dept."), testified for Plaintiffs. The Embreeville Fire Dept. services the properties involved in this lawsuit as a primary responder with the Jonesborough Fire Department serving this area as a second responder.

Mr. Garland testified that the Embreeville Fire Dept.'s largest apparatus has a wheelbase of eight feet with mirrors and height of the apparatus needing twelve feet of space. Mr. Garland viewed the Driveway and testified that if the Embreeville Fire Dept. needed to take equipment on the Driveway, "we would be going at a real slow speed through there anyway, but we've been, you know, in tighter spaces. But we could get our trucks up in there if the driveway is 12-foot by 12-foot clearance, you know, without brush and stuff hitting the sides of the trucks and knocking the mirrors and stuff." When asked, Mr. Garland clarified that the area he is talking about as being wider on the apparatus is high up with the mirrors, not at the wheelbase of the vehicle. Mr. Garland believes that the Embreeville Fire Dept. has had a call to this property before, but could not recall when it was.

Joseph William Shew testified he was born on the property and lived there for several years before his family moved away and that even after they moved, he still visited the property because his grandfather and uncles owned portions of it. Mr. Shew testified:

> when I was real young that driveway didn't go that particular direction; it went down around by where Mike Bawgus's trailer now sits, until Roy Taylor, who was L.L. Taylor's son, got out of college about 1950. And Roy built the present driveway until the bridge, where the culvert is now.

Mr. Shew testified that the Driveway has not changed since Roy Taylor built it around 1950.

Mr. Shew testified that rain washes the gravel on the Driveway away and that he and the Lewises scrape the driveway to correct this and they trim shrubbery and bushes back to the fences periodically to improve visibility and keep cars from being scratched. The driveway also has been re-graveled. Mr. Shew admitted that he never made any offer to purchase property from the Defendants "before the lawsuit. We really understood that we—well, we believe that we have the right to do it without having to buy it." Mr. Shew testified that he asked the county if they would pave and maintain the Driveway and was told that they would need to have a forty-foot right-of-way before the county would do that.

Kenneth L. Lewis testified that he is a C.P.A. and a farmer and that in connection with his farming operation, he uses the Driveway almost every day. Mr. Lewis uses the Driveway to haul cattle trailers and operate dump trucks, hay equipment, tractors, mowing machines and other farm equipment. Photographs were introduced of some farming equipment traversing the Driveway and Mr. Lewis admitted that the vehicles pictured had traveled up and down the Driveway. Mr. Lewis also admitted that they have had a fire on the property and that both the Embreeville Fire Dept. and the Carter County Fire Department responded and brought firetrucks down the Driveway.

Bobby Freeman, a volunteer with the Jonesborough Fire Department ("Jonesborough Fire Dept.") testified as an expert for Defendants. Mr. Freeman was the fire chief for eight years and is a certified firefighter, inspector, and instructor. Mr. Freeman testified about EVOP standards which must be met every year in order for a firefighter to drive fire apparatus. Mr. Freeman explained that the driver must complete a twelve-hour class consisting of four hours of classroom instruction and eight hours of driving through a course that consists of "different scenarios of it on the course you have to back through, drive through." Mr. Freeman stated that the course involves a nine and a half or ten-foot alley that the driver has to back the equipment through and that the fire apparatus at the Jonesborough Fire Dept. will all fit through that width. Mr. Freemen served with the Embreeville Volunteer Fire Dept. for twelve years and is familiar with their apparatus and testified that the Embreeville Volunteer Fire Dept. does not have any apparatus wider than the Jonesborough Fire Dept. has.

Mr. Freeman viewed the Driveway and testified: "The only thing that I seen, which we're familiar—running the county zone, we get into it all the time, is tree limbs will hang over and sometimes they'll scratch your firetruck or hit the mirror or whatever. But that's all I seen or observed when I was there." He observed nothing that would make him hesitate to drive apparatus down the Driveway to respond to a fire. Mr. Freeman stated: "When it comes to life and death you do

what you have to do. In this case, all I seen was maybe I could scratch the firetruck, and that's normal. It happens quite often in the county." Mr. Freeman agreed that the tree limbs would not touch the apparatus if the limbs were trimmed.

Georgia Bawgus testified that in 1969, the Driveway was "[j]ust exactly like it is." Ms. Bawgus testified she had a conversation with Ms. Shew and that Ms. Shew told her they had a thirty-foot easement and Ms. Bawgus told Ms. Shew they did not. Ms. Bawgus testified:

When Lillian Taylor lived there, you know, she was the first one there. She told me she needed a waterline and she was going to run a waterline within the boundary of her property. And I said, "Well, where is your boundary line?" She said, "Up to Burton France Road." And I went and checked the deed and hired my lawyer, John Sanders. He checked the deed out and he said he found nothing proving that she did. So, I talked to her and I asked her—I told her I didn't think she had one. So, at a later date she came up to my house. And my husband was living at that time. And she said she found out she did not have a 30–foot right-of-way; would we sign that over to her and go to her Lawyer Green. Now, we didn't say we would or we wouldn't, but we didn't.... Never. Never agreed. Steve Barcik asked me for it, to give it to him, that the people that was buying his house didn't want to buy it without a 30–foot right-of-way. And I said, "Well, you bought it without one. Why can't they buy it without one? I'm not giving it to anybody." Then Shirley and her husband that lived over on the other side, she came and asked for it and I said no. Then when Mr. Lewis bought it, his real estate guy, Sam Humphreys, came up to my house and asked me to sign that right-of-way over to Mr. Lewis. And I

said I couldn't do that if I wanted to; I've already given it to my son.... They said they had it on their deed. I said, "Well, it's not on my deed."

Michael A. Bawgus testified that Mr. Shew approached him and wanted to widen the Driveway, but "never offered any money or to buy ...."

C. Alan Longmire, testified that Mr. Shew approached him and his wife regarding the Driveway. Mr. Longmire testified:

We were just taking a break from painting and he came up and introduced himself and asked if we would be interested in selling him some land to make a 30–foot driveway. And we said, well, no, we wouldn't. And he said, "Well, I have a 30–foot right-of-way and we're going to have asphalt here in three days."

After trial, the Trial Court entered a Judgment October 27, 2005, finding and holding, *inter alia:*

that the existence and location of the easement is not at issue between the Plaintiffs and Defendants...; but that the width of the easement was disputed; that the driveway as it is presently constructed is unsafe and unreasonably difficult to maintain and use, owing to the location, alignment, construction and topography of the land; that to make the driveway usable, safe and maintainable, the physical construction of the driveway should be expanded from its existing width of nine (9) feet at its most narrow point to a width of fifteen (15) feet on either side of the center line of the existing driveway, for a total width of thirty (30) feet; that the width of the easement reserved by L.L. Taylor and benefiting (sic) the property of the Plaintiffs is thirty (30) feet; ... that the driveway has been used by the Plaintiffs and their predecessors in title continuously, actually, exclusively, openly and

hostily (sic) for a period commencing around the 1950's and the Plaintiffs therefore alternatively have a prescriptive easement to use the driveway.

Defendants appeal to this Court.

### *Discussion*

Although not stated exactly as such, Defendants raise two issues on appeal: 1) whether the Trial Court erred in finding and holding that the Easement granted by deed is thirty feet wide, and, 2) whether the Trial Court erred in finding and holding, in the alternative, that a prescriptive easement existed that entitled Plaintiffs to enlarge the Driveway to thirty feet in width.

■ Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R.App. P. 13(d); *Bogan v. Bogan,* 60 S.W.3d 721, 727 (Tenn.2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.,* 58 S.W.3d 706, 710 (Tenn.2001).

■ We first will consider whether the Trial Court erred in finding and holding that the Easement granted by deed is thirty feet wide. As our Supreme Court explained in *Griffis v. Davidson County Metro. Gov't:*

In construing a deed, our primary task is to ascertain the grantor's intent from the words of the deed as a whole and from the surrounding circumstances. *Collins v. Smithson,* 585 S.W.2d 598, 603 (Tenn.1979); *Bennett v. Langham,* 214 Tenn. 674, 383 S.W.2d 16, 18 (1964). Interpretation of a deed is a question of law. *Rodgers v. Burnett,* 108 Tenn. 173, 65 S.W. 408, 411 (1901); *Mitchell v.*

*Chance,* 149 S.W.3d 40, 45 (Tenn.Ct.App. 2004).

*Griffis v. Davidson County Metro. Gov't,* 164 S.W.3d 267, 274 (Tenn.2005). "In construing the language in a written instrument, 'the words expressing the party's intention should be given the usual, natural and ordinary meaning.'" *Cellco P'ship d/b/a Verizon Wireless v. Shelby County,* 172 S.W.3d 574, 587 (Tenn.Ct.App.2005) (quoting *Ballard v. N. Am. Life & Cas. Co.,* 667 S.W.2d 79, 82 (Tenn.Ct.App. 1983)). "Any reference to subsequently executed instruments in order to glean the grantor's intent at the time of conveyancing was in error." *Id.* at 590 (discussing the requirements for establishment of an easement by implication.).

■ In *Cellco P'ship d/b/a Verizon Wireless,* this Court stated:

"[t]he range of permissible uses of any particular easement is in the first instance defined by the circumstances surrounding the creation of that easement; its use is limited to the purposes for which it was created." 28A C.J.S. *Easements* § 159 (1996). Our case law adopts this general proposition, providing that:

"The use of an easement must be confined strictly to the purposes for which it was granted or reserved. A principle which underlies the use of all easements is that the owner of an easement cannot materially increase the burden of it upon the servient estate or impose thereon a new and additional burden." 17 Am.Jur. 996, sec. 98 ....

"In other words, an easement appurtenant to a dominant tenement can be used only for the purposes of that tenement; it is not a personal right, and cannot be used, even by the dominant owner, for any purpose uncon-

nected with the enjoyment of his estate. The purpose of this rule is to prevent an increase of the burden upon the servient estate, and it applies whether the easement is created by grant, reservation, prescription, or implication." 9 R.C.L., 786, sec. 43; Jones on Easements, secs. 99 and 100.

"A principle which underlies the use of all easements is that the owner thereof cannot materially increase the burden of it upon the servient estate, nor impose a new and additional burden thereon....It may be said in general that if an easement is put to any use inconsistent with the purpose for which it was granted, the grantee becomes a trespasser to the extent of the unauthorized use." 9 R.C.L., 790, sec. 47; Jones on Easements, secs. 99 and 100.

*Adams v. Winnett,* 25 Tenn.App. 276, 156 S.W.2d 353, 357 (1941); *see also McCammon v. Meredith,* 830 S.W.2d 577, 580 (Tenn.Ct.App.1991).

*Cellco P'ship d/b/a Verizon Wireless,* 172 S.W.3d at 595–96. " 'Where [an] easement is not specifically defined, it need be only such as is reasonably necessary and convenient for the purpose for which it was created.' " *Burchfiel v. Gatlinburg Airport Auth., Inc.,* No. E2005–02023–COA–R3–CV, 2006 Tenn.App. LEXIS 747, at *9, 2006 WL 3421282, at *3 (Tenn.Ct.App. Nov.28, 2006), *no appl. perm. appeal filed,* (quoting *Adams v. Winnett,* 25 Tenn.App. 276, 156 S.W.2d 353, 358 (Tenn.Ct.App. 1941)).

In *Fanning v. Wallen,* this Court explained:

If the location of an easement cannot be ascertained by the language of the instrument or the surrounding circumstances, the use of the way fixes the location. *See Hill v. U.S. Life Title Ins. Co. of N.Y.,* 731 S.W.2d 910, 913 (Tenn.

Ct.App.1986) ("If a right of way is decreed over the lands of another, it is not necessary for the parties expressly to designate its location, but it is sufficient if a right-of-way is used and acquiesced in. The use fixes the location.") (quoting *Richardson v. Bristol Land & Improvement Co.,* 1 Tenn.App. 671, 690 (1929)). *Fanning v. Wallen,* No. E2001–00228–COA–R3–CV, 2001 Tenn.App. LEXIS 620, at *15, 2001 WL 950001, at *6 (Tenn.Ct. App. Aug.21, 2001), *no appl. perm. appeal filed.*

The evidence shows that the Easement was created in the 1932 deed from L.L. Taylor and his wife to E.S. Taylor, which states, in pertinent part: "The party of the first part reserves the right of outlet over said property." The deed that created the Easement does not specify the location and size of the Easement. We, therefore, must construe the deed. We begin by noting that the parties to this lawsuit agree as to the location of the Easement and disagree only as to the width of the Easement. We, therefore, will look to the deed and the surrounding circumstances to determine the width of the Easement.

The record reveals that the Driveway within the Easement was created in the 1950's and since that time has not changed. The evidence shows that the Driveway has been used for all of these years for ingress and egress, or outlet, as originally intended pursuant to the plain language of the deed. The Driveway has been, and still is, used for ingress and egress as was clearly intended when it was created. As the Driveway has been used pursuant to the purpose for which it was created and its width has not changed in over fifty years, "the use of the way fixes the location." *Id.*

This Court dealt with a case with strikingly similar facts to the case now before us in *Carroll v. Belcher,* and held that to allow the plaintiffs to enlarge an easement

with a width that had remained constant for more than fifty years would be an "unwarranted interference" with the defendant's rights and cause an undue burden upon the servient estate. *Carroll v. Belcher*, No. 01A01–9802–CH–00106, 1999 Tenn.App. LEXIS 89, at *10–11, 1999 WL 58597, at *4 (Tenn.Ct.App. Feb.9, 1999), *no appl. perm. appeal filed.*

In the case now before us, to allow Plaintiffs to enlarge the Easement to thirty feet would cause an unwarranted interference with the Defendants' rights and would materially increase the burden upon the Servient Estate and cause an undue burden. The evidence shows that to allow Plaintiffs' to enlarge the Easement to thirty feet would substantially encroach upon Defendants' properties and would require the removal of a fence line and large existing trees, and would remove a buffer leaving Defendants' properties more open to view thereby encroaching upon Defendants' privacy.

The plain language of the deed creating the Easement provides that the Easement is to be used for outlet, and the evidence in the record reveals that the Easement has been used successfully for this purpose for over fifty years with no change in the parameters of the Driveway. To allow Plaintiffs to widen the Driveway would materially increase the burden upon the Servient Estate and cause an undue burden. As such, we reverse the Trial Court's holding that the Easement as reserved by deed was thirty feet in width.

We next will address whether the Trial Court erred in finding and holding that a prescriptive easement existed that entitled Plaintiffs to enlarge the driveway to thirty feet in width. In the recent case of *Walker v. Huff,* this Court stated:

a prescriptive easement "does not arise from absolute possession and control, but from a persistent and continuous use

of a privilege less than that of ownership." *Michael v. Jakes,* No. M1999–02257–COA–R3–CV, 2002 WL 1484448 at *4, 2002 Tenn.App. LEXIS 489 at *12–13 (Tenn. Ct.App. M.S., filed July 12, 2002). However, "the 'use and enjoyment' which will give rise to an easement by prescription is substantially the same in quality and characteristics as the possession required to establish title by adverse possession, in that both must be open, continuous and adverse." *Id.*

As this court has recently stated regarding the doctrine of easement by prescription,

An easement is an interest in another's real property that confers on the easement's holder an enforceable right to use that real property for a specific purpose. *Bradley v. McLeod,* 984 S.W.2d 929, 934 (Tenn.Ct.App. 1998). The most common form of an easement is a right of passage across another's property. A prescriptive easement is an implied easement that is premised on the use of the property rather than language in a deed. A prescriptive easement arises when a person, acting under an adverse claim of right, makes continuous, uninterrupted, open, visible, and exclusive use of another's property for at lease twenty years with the owner's knowledge and acquiescence. *Michael v. Jakes,* No. M1999–02257–COA–R3–CV, 2002 Tenn.App. LEXIS 489, at *48, [2002 WL 1484448, at *14] (Tenn. Ct.App. Jul. 12, 2002) (no Tenn. R.App. P. 11 application filed). The party asserting a claim of prescriptive easement bears the burden of proving these elements by clear and convincing evidence. *See McCammon v. Meredith,* 830 S.W.2d 577, 580 (Tenn. Ct.App.1991); *Fite v. Gassaway,* 27

Tenn.App. 692, 701, 184 S.W.2d 564, 567 (1944).

*Stinson v. Bobo,* No. M2001–02704–COA–R3–CV, 2003 WL 238723 at *3, 2003 Tenn.App. LEXIS 83 at *8–9 (Tenn. Ct.App. M.S., filed Feb. 4, 2003) (footnote and some citations omitted).

*Walker v. Huff,* No. E2005–01096–COA–R3–CV, 2006 Tenn.App. LEXIS 195, at *18–20, 2006 WL 721308, at *7 (Tenn.Ct. App. March 22, 2006), *no appl. perm. appeal filed.*

In the case now before us, the Trial Court found and held that Plaintiffs were entitled to a prescriptive easement because they and their predecessors in title had used the land "continuously, actually, exclusively, openly and hostily (sic) for a period commencing around the 1950's...." The record, however, shows that Plaintiffs and their predecessors in title used only that land that encompasses the current width of the Driveway. Several witnesses testified that the Driveway has not changed in over fifty years. Plaintiffs did not prove by clear and convincing evidence that they had ever used any portion of the Easement beyond the current width of the Driveway.

Plaintiffs argue that "the easement must be thirty feet wide as reasonably necessary to ensure the safety of the owners of the dominant tract and their ability to properly use and maintain the easement for ingress and egress." However, the evidence shows otherwise.

Mr. Garland, from the Embreeville Fire Dept., testified that if they needed to take fire equipment on the Driveway, "we would be going at a real slow speed through there anyway, but we've been, you know, in tighter spaces." Mr. Garland further testified that the Embreeville Fire Dept. has previously responded to a call to this property, but that he could not remember exactly when.

Bobby Freeman, from the Jonesborough Fire Dept. testified regarding the standards that must be met in order to drive fire apparatus and explained that firefighters must complete a driving course that involves "different scenarios of it on the course you have to back through, drive through." Mr. Freeman stated that the course involves a nine and a half or ten-foot alley that the driver has to back the equipment through. Thus, firefighters driving fire equipment should be capable of even backing the equipment through a space as narrow as the narrowest portion of the Driveway. No evidence was produced at trial showing that if firefighters were required to respond to a call on this property that they would be required to back the fire equipment down the Driveway in order to respond to the call.

Further, Mr. Freeman viewed the Driveway and testified: "The only thing that I seen, which we're familiar—running the county zone, we get into it all the time, is tree limbs will hang over and sometimes they'll scratch your firetruck or hit the mirror or whatever. But that's all I seen or observed when I was there." He observed nothing that would make him hesitate to drive apparatus down the Driveway to respond to a fire. Mr. Freeman stated: "When it comes to life and death you do what you have to do. In this case, all I seen was maybe I could scratch the firetruck, and that's normal. It happens quite often in the county." Mr. Freeman also agreed that if the tree limbs were trimmed, they would not touch the apparatus.

Plaintiffs' expert registered engineer, Mr. Tysinger, testified that you would need more width in order for vehicles and farm equipment to pass other vehicles and equipment on the Driveway. However, Mr. Tysinger never testified that it would

be impossible for a single vehicle or piece of farm equipment to traverse the Driveway. Further, Mr. Tysinger admitted that under his 30–foot width plan, the Driveway would be wider than Burton France Road is in some places.

Mr. Lewis admitted that farm equipment, such as cattle trailers, dump trucks, hay equipment, tractors, and mowing machines, traveled regularly up and down the Driveway. Mr. Lewis also admitted that they have had a fire on the property and that both the Embreeville Fire Dept. and the Carter County Fire Department responded and brought firetrucks down the Driveway.

The evidence preponderates against a finding that it is necessary to enlarge the Driveway to 30 feet in width either for safety or to allow the Plaintiffs the reasonable use of the Easement for ingress and egress. As the evidence preponderates against this finding and Plaintiffs failed to show by clear and convincing evidence that they had possessed any portion of the Easement beyond the current width of the Driveway, we reverse the Trial Court's holding granting Plaintiffs a prescriptive easement 30 feet in width.

### Conclusion

The judgment of the Trial Court is reversed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellees, Joseph W. Shew, Jr., Nyoka Shew, Kenneth L. Lewis, and Shirley A. Lewis.