# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
August 28, 2014 Session

### THE ESTATE OF CHERYL LYNN QUINN, BY PERSONAL REPRESENTATIVE, WILLIAM PAUL QUINN v. THOMAS HENDERSON ET AL.

**Appeal from the Circuit Court for Blount County**
No. L-17653     David R. Duggan, Judge

_____

### No. E2013-02398-COA-R3-CV-FILED-NOVEMBER 13, 2014

_____

This is an appeal from a grant of summary judgment to the defendant governmental entities. The decedent, Cheryl Lynn Quinn, died from smoke inhalation following a house fire allegedly set by her ex-boyfriend. Her estate filed a wrongful death action against the ex-boyfriend as well as the Blount County Sheriff's Department ("Sheriff's Department"), the Blount County 911 Communication Center ("911"),[1] and the Blount County Fire Protection District ("Fire Department"). The claims against the alleged arsonist and the Sheriff's Department were nonsuited, and the trial court granted summary judgment to 911 and the Fire Department. Plaintiff has appealed. Discerning no reversible error, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and D. MICHAEL SWINEY, J., joined.

Kevin W. Shepherd, Maryville, Tennessee, for the appellant, Estate of Cheryl Lynn Quinn.

Russell W. Adkins, Kingsport, Tennessee, for the appellee, Blount County Fire Protection District.

Courtney Epps Read, Knoxville, Tennessee, for the appellee, Emergency Communications District of Blount County.

_____

[1]We note that the proper legal name of this entity is Emergency Communications District of Blount County.

# OPINION

## I. Factual and Procedural Background

William Paul Quinn, as personal representative and beneficiary of the estate of Cheryl Lynn Quinn ("Plaintiff"), filed the instant action on October 14, 2011, asserting a wrongful death claim on behalf of the estate. The original defendants were Thomas Henderson (the alleged arsonist), the Sheriff's Department, 911, and the Fire Department. Ms. Quinn, a resident of Blount County, telephoned 911 at approximately 8:22 p.m. on October 14, 2010. The call was received by dispatcher Heather Murphy. The exchange between Ms. Quinn and Ms. Murphy was as follows:

Dispatcher: 911. Where's your emergency?

Quinn: My ex-boyfriend is out in my garage and he's setting fire to my garage and could you send someone out here immediately?

Dispatcher: What's your address?

Quinn: 3806 Fox Creek Farm.

Dispatcher: 3806 . . .

Quinn: 3806 Fox Creek Farm.

Dispatcher: Thompson Farms?

Quinn: Fox Creek Farm.

Dispatcher: Fox Creek. Is that Fox Creek Road?

Quinn: Fox Creek Road.

Dispatcher: Okay. You said your ex-boyfriend was there?

Quinn: Yes.

Dispatcher: Okay. What's his name?

Quinn: Thomas Henderson.

Dispatcher: Is he outside?

Quinn: Yes.

Dispatcher: And what did he do to your car?

Quinn: No. My garage. He set fire to it.

Dispatcher: Is your garage still on fire?

Quinn: Yes. I don't want to go out there.

Dispatcher: Okay. Are you in the house?

Quinn: Yes. I'm in the house.

Dispatcher: So, is your garage on fire?

Quinn: Ah, he set some things on fire. His family's coming over here and they've been very physically aggressive . . .

Dispatcher: Okay.

Quinn: [Unintelligible.] So I'm really concerned.

Dispatcher: Is the garage attached to the house?

Quinn: Yes.

Dispatcher: **And you're not gonna go outside**?

Quinn: Huh? Well, no, I'm inside, and I just want somebody on the way and I will try to turn it off.

Dispatcher: But, is the garage on fire?

Quinn: **No. He set some things on fire.**

Dispatcher: **So the garage is not on fire. What did he set on fire?**

Quinn: I don't know.  I just looked out the window and he set some things on fire near the door.

Dispatcher: **So is the structure on fire or just items outside?**

Quinn: Well, there's a wooden . . . thing.  I don't know.

Dispatcher: Okay.

Quinn: There's a wooden platform, a wooden stand.

Dispatcher: All right.  Is, can you see Thomas?

Quinn: No, not at this second.  His sister's coming to get him.  They're trying to press charges on me.

Dispatcher: Okay.  What is your name?

Quinn: Cheryl Quinn.

Dispatcher: Is there any weapons?

Quinn: Not that I'm aware of.

Dispatcher: And what's your phone number there Cheryl?

Quinn: 603-4680.

Dispatcher: 603-4680?

Quinn. Yes.

Dispatcher: Okay.  And what's the alarm I hear in the background?

Quinn: That's my ADT.

Dispatcher: It's ADT?  Did you set it?

Quinn: Yes.

Dispatcher: Okay. Have you got it turned off now?

Quinn: Well I didn't; it just went off.

Dispatcher: Okay.

Quinn: I don't know if he cut the wires or what.

Dispatcher: Okay. All righty. Are you inside the house and the door's locked?

Quinn: Yes.

Dispatcher: Okay. **But the garage itself is not on fire. Is that correct?**

Quinn: Well, it could catch on fire if I don't get out there and put it out, but I just wanted to call somebody first.

Dispatcher: Okay.

Quinn: I can't shut the garage because he's got his car blocked so I can't shut the garage door. **It's really going up fast.**

Dispatcher: Okay. I've got 'em on the way out there.

Quinn: There's flammable stuff.

Dispatcher: Okay. I've got 'em on the way out there. If anything . . . if you see him, call me back, okay?

Quinn: He's standing out there. He's waiting on his sister to come get him.

Dispatcher: Okay.

Quinn: He's crazy.

Dispatcher: Is there any weapons?

Quinn: Not that I'm aware of.

Dispatcher: Okay. I've got 'em on the way out there, okay?

Quinn: All right.

Dispatcher: Thank you.

Dispatcher: [Unintelligible.] To Blount County Fire Department. Got a report of a platform beside a garage on fire. 3806 Fox Creek Lane. 3-8-0-6 Fox Creek Lane, cross Fox Ridge Road. It's going to be domestic-related; ex-boyfriend set the . . . part of the garage there on fire. Fox Creek's gonna run off Ralph Phelps Road.

(Emphasis added.)

Immediately after the information was received from Ms. Quinn, 911 dispatched firefighters and the Sheriff's Department to the scene. Firefighter Raymond Dorsey was the first person to arrive on the scene, driving his private vehicle. Mr. Dorsey observed Mr. Henderson sitting in his car in the driveway and felt that he looked "suspicious." As Mr. Dorsey was aware that there existed a potential domestic dispute, he radioed Captain Jim Patty, who was responsible for determining the Fire Department's response to the fire. Captain Patty instructed Mr. Dorsey to leave the scene for his own safety until the Sheriff's Department arrived. Captain Patty made the determination that the Fire Department would take no action until the scene was secured by law enforcement.

Once the Sheriff's Department arrived and secured the scene at 8:42 p.m., firefighters immediately began fighting the fire. Chief Doug McClanahan testified that he became aware that Ms. Quinn was still inside the home at this time. According to Chief McClanahan, he called back to the 911 center to inquire as to the status of the caller. Another 911 employee, David Nelson, attempted to contact Ms. Quinn by telephone. As the call went through, Ms. Quinn was not responsive but could be heard choking, gagging, and calling for help. When the Sheriff's Department secured the scene, firefighters immediately entered the home, found Ms. Quinn unconscious in the bathroom, and carried her from the home. Ms. Quinn died two days later from smoke inhalation.

This action was filed on October 14, 2011, against Mr. Henderson, the Blount County Sheriff's Department, 911, and the Fire Department, alleging negligence claims pursuant to the Governmental Tort Liability Act. Plaintiff subsequently voluntarily dismissed the claims against the Sheriff's Department. The two remaining governmental entities filed motions for summary judgment, which the trial court granted. The trial court based its grant of summary judgment to these two defendants on (1) a finding that the entities were engaged in planning

functions, such that their actions were immune pursuant to the Governmental Tort Liability Act; (2) the public duty doctrine; and (3) comparative fault. Plaintiff filed a notice of appeal and voluntarily dismissed all claims against Mr. Henderson so that the appeal could proceed.

## II. Issues Presented

Plaintiff presents the following issues for our review, which we have restated slightly:

1.    Whether the trial court erred in granting summary judgment to the governmental entities based on its finding that the entities were involved in planning rather than operational functions.

2.    Whether the trial court erred in concluding that the public duty doctrine barred Plaintiff's claims against the governmental entities.

3.    Whether the trial court erred in granting summary judgment to the governmental entities based on principles of comparative fault.

4.    Whether the trial court erred in accepting the expert opinion offered on behalf of the Blount County Fire Protection District.

## III. Standard of Review

For actions initiated on or after July 1, 2011, such as the one at bar, the standard of review for summary judgment delineated in Tennessee Code Annotated § 20-16-101 (Supp. 2013) applies. *See Sykes v. Chattanooga Hous. Auth.*, 343 S.W.3d 18, 25 n.2 (Tenn. 2011). The statute provides:

In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:

(1)    Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or

(2)    Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

Tenn. Code Ann. § 20-16-101.[2]

As our Supreme Court has explained:

The standards by which appellate courts customarily review decisions to grant or deny motions for summary judgment are well-known by the bench and bar. Summary judgments are appropriate in virtually every civil case that can be resolved on the basis of legal issues alone. They are not appropriate when genuine disputes regarding material facts exist. Accordingly, a summary judgment is appropriate only when the undisputed facts, and the inferences in the non-moving party's favor reasonably drawn from these facts, require granting a judgment as a matter of law to the party seeking the summary judgment.

Orders granting a summary judgment are not entitled to a presumption of correctness on appeal. Thus, appellate courts reviewing an order granting a summary judgment must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. The reviewing court must consider the evidence in the light most favorable to the non-moving party and must resolve all reasonable inferences in the non-moving party's favor.

*B & B Enter. of Wilson Cnty., LLC v. City of Lebanon*, 318 S.W.3d 839, 844-45 (Tenn. 2010) (internal citations omitted).

---

[2]As this Court has explained:

Section 20-16-101 was enacted to abrogate the summary-judgment standard set forth in *Hannan* [*v. Alltell Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008)], which permitted a trial court to grant summary judgment only if the moving party could either (1) affirmatively negate an essential element of the nonmoving party's claim or (2) show that the nonmoving party cannot prove an essential element of the claim at trial. *Hannan*, 270 S.W.3d at 5. The statute is intended "to return the summary judgment burden-shifting analytical framework to that which existed prior to *Hannan*, reinstating the 'put up or shut up' standard." *Coleman v. S. Tenn. Oil Inc.*, No. M2011-01329-COA-R3-CV, 2012 WL 2628617, at *5 n.3 (Tenn. Ct. App. July 5, 2012).

*Walker v. Bradley County Gov't*, No. E2013-01053-COA-R3-CV, 2014 WL 1493193 at *3 n.3 (Tenn. Ct. App. Apr. 15, 2014). *See also Sykes*, 343 S.W.3d at 25 n.2.

IV. Governmental Tort Liability Act and Immunity

Governmental entities, such as the Fire Department and 911 in this action, possess sovereign immunity from lawsuits except as they consent to be sued. *See Hawks v. City of Westmoreland*, 960 S.W.2d 10, 14 (Tenn. 1997). The Governmental Tort Liability Act ("GTLA"), codified in 1973, governs claims against counties and other local government agencies, providing for circumstances when sovereign immunity is removed.[3] *See* Tenn. Code Ann. §§ 29-20-201 to -207 (2012); *Lucius v. City of Memphis*, 925 S.W.2d 522, 525 (Tenn. 1996). Except for those circumstances provided under the GTLA, governmental entities are immune from suit for any injury resulting from the entities' activities while engaged in the "exercise and discharge" of their functions. *See* Tenn. Code Ann. § 29-20-201(a).

The trial court found that the governmental entities had immunity pursuant to the GTLA because they were acting in a discretionary or planning capacity. Regarding immunity pursuant to the GTLA, Tennessee Code Annotated § 29-20-205 provides in pertinent part:

> Immunity from suit of all governmental entities is removed for injury proximately caused by a **negligent** act or omission of any employee within the scope of his employment except if the injury:
>
> (1) Arises out of the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused.

(Emphasis added.)

A claim of negligence requires proof of the following elements: (1) a duty of care owed by the defendant; (2) conduct that falls below the applicable standard of care, amounting to a breach of the duty of care; (3) injury or loss; (4) cause in fact; and (5) proximate cause. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). In this case, Plaintiff has alleged the following negligent acts/omissions by the Fire Department: (1) that Mr. Dorsey did not assist or attempt to rescue Ms. Quinn upon his arrival but instead waited for law enforcement to arrive, per instructions from Captain Patty and (2) that the resultant response time was unreasonable.

Regarding the negligence of 911, Plaintiff alleged that (1) the call was inappropriately

---

[3]Claims against the State are governed by the Tennessee Claims Commission Act. *See* Tenn. Code Ann. §§ 9-8-301 to -407; *Mullins v. State*, 320 S.W.3d 273, 278 (Tenn. 2010).

designated as having "medium" priority, (2) Ms. Murphy failed to dispatch responders in a timely manner, (3) Ms. Murphy ended the call with Ms. Quinn rather than keeping her on the line and failed to timely call Ms. Quinn back, (4) Ms. Murphy was negligent in ascertaining the severity of the emergency, and (5) the communication to responders was deficient.

### A.  Alleged Negligence of Fire Department and Expert Affidavit

When reviewing the trial court's grant of summary judgment, this Court must view the evidence in the light most favorable to Plaintiff.  *See B&B Enter*., 318 S.W.3d at 845. Plaintiff asserts that Mr. Dorsey acted negligently in failing to assist or rescue Ms. Quinn when he arrived upon the scene.  Instead, Mr. Dorsey waited for law enforcement to arrive and secure the scene, as directed by Captain Patty.  As a result, Plaintiff asserts that the Fire Department's response time was unreasonable, resulting in injury to Ms. Quinn.

The Fire Department contends that no breach of duty was shown and that it submitted affirmative evidence that negated this essential element of Plaintiff's claim.  The Fire Department submitted evidence in the form of an affidavit from Gregory Miller, Fire Chief for the City of Gatlinburg.  Chief Miller stated that he was familiar with the standard of care applicable to the Fire Department and that this standard of care would require that firefighters stay clear of the scene of a domestic dispute, violence, or crime in progress until law enforcement secured the scene.  Chief Miller, having reviewed the 911 recordings and all documentation related to this incident, opined that the Fire Department acted appropriately and fully complied with the standard of care.  The trial court quoted from this affidavit in its findings of fact.

Plaintiff posits that the trial court erred in relying upon the expert affidavit submitted by Chief Miller because it was not shown that Blount County had adopted such a policy in this case.  Plaintiff argues that the affidavit was therefore based on facts not in evidence.  As the trial court noted in its opinion, however, Chief McClanahan testified that it was the Fire Department's standard procedure to have a firefighter clear the scene until law enforcement had secured it in the event of a domestic incident.  When asked if the Fire Department had a policy stating how they were to handle a domestic incident involving a fire, McClanahan responded, "Our policy states that the safety of the firefighters is the utmost."  Therefore, Chief Miller's affidavit does not rely upon facts not in evidence.

As our Supreme Court has explained:

In general, questions regarding the admissibility, qualifications, relevancy and competency of expert testimony are left to the discretion of the trial court. *State v. Ballard*, 855 S.W.2d 557, 562 (Tenn. 1993).  The trial court's ruling

in this regard may only be overturned if the discretion is arbitrarily exercised or abused. *Id*.

*McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257, 263-64 (Tenn. 1997). Tennessee Rule of Civil Procedure 56.06 provides the following guidance:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but his or her response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. Expert opinion affidavits shall be governed by Tennessee Rule of Evidence 703.

Tennessee Rule of Evidence 703 states:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. The court shall disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness.

In this case, Chief Miller testified based on his personal knowledge of the standard of care applicable to firefighters and his knowledge of the facts of this case as gleaned from his review of the documents and recordings. There was no showing of any lack of trustworthiness in Chief Miller's underlying facts or data. As our Supreme Court has elucidated, "[t]o give expert testimony, one must be particularly skilled, learned or experienced in a science, art, trade, business, profession or vocation, a thorough knowledge of which is not within the scope of the common knowledge and experience of the average person." *See Kinley v. Tenn. State Mut. Ins. Co.*, 620 S.W.2d 79, 81 (Tenn. 1981). The

courts of this state have repeatedly held that determining whether a professional's conduct complies with the applicable standard of care is beyond the common knowledge of lay persons. *See Moon v. Saint Thomas Hosp.*, 983 S.W.2d 225, 229 (Tenn. 1998) (medical malpractice); *Lazy Seven Coal Sales, Inc. v. Stone & Hinds, P.C.*, 813 S.W.2d 400, 406 (Tenn. 1991) (legal malpractice). Further, an expert's testimony should be allowed if it (1) is based on the same intellectual rigor that is expected of persons engaged in the relevant field of endeavor and (2) will substantially assist the trier of fact. *See Johnson v. John Hancock Funds*, 217 S.W.3d 414, 425 (Tenn. Ct. App. 2006).

This Court has previously accepted the expert testimony of a firefighter regarding training standards and equipment requirements. *See Shew v. Bawgus*, 227 S.W.3d 569, 574 (Tenn. Ct. App. 2007). As such, we see no reason to find that the trial court abused its discretion in allowing the expert testimony of Chief Miller regarding the standard of care applicable to firefighters responding to a fire involving a domestic incident. Chief Miller's knowledge regarding this standard is clearly outside the scope of the common knowledge and experience of the average person. *See Kinley*, 620 S.W.2d at 81. Further, Chief Miller's knowledge is based on his engagement in the "relevant field of endeavor" and did substantially assist the trier of fact. *See Johnson*, 217 S.W.3d at 425. We conclude that the trial court did not err in relying upon Chief Miller's affidavit regarding the standard of care and his opinion that it had not been breached in this case.

Based on the testimony of Chief McClanahan and affidavit of Chief Miller, we determine that summary judgment was properly granted to the Fire Department without the necessity of determining whether the injury arises out of the exercise or performance of a discretionary function. The threshold question is whether immunity has been removed because the injury was caused by the negligent act or omission of a governmental employee acting within the scope of his or her employment. *See* Tenn. Code Ann. § 29-20-205. As stated previously, if there has been no breach of the standard of care, then there can be no finding of negligence. *See McCall*, 913 S.W.2d at 153. Absent a finding of negligence, governmental immunity still applies. *See* Tenn. Code Ann. § 29-20-205. In this case, the evidence provided by Chief McClanahan and Chief Miller established that there was no breach of the duty of care, and Plaintiff filed no affidavits or evidence refuting this proof or otherwise creating a genuine issue of material fact for trial.

Tennessee Rule of Civil Procedure 56.06 provides:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but his or her response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there

is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Because Plaintiff failed to provide any countervailing proof, summary judgment was properly granted to the Fire Department. Chief McClanahan's and Chief Miller's testimony established that there had been no breach of the duty of care. The Fire Department therefore submitted affirmative evidence that negated an essential element of Plaintiff's claim. *See* Tenn. Code Ann. § 20-16-101.

As stated previously, the trial court granted summary judgment to the Fire Department because, *inter alia*, the trial court found that the Fire Department employees were engaged in planning functions. We conclude that the trial court did not err in granting summary judgment to the Fire Department, albeit on different grounds. *See Cont'l Cas. Co. v. Smith*, 720 S.W.2d 48, 50 (Tenn. 1986) (holding that an appellate court will affirm a decree correct in result but rendered upon different, incomplete, or erroneous grounds). Therefore, the trial court's grant of summary judgment to the Fire Department is affirmed.

### B. Alleged Negligence of 911

As stated previously, Plaintiff's allegations of negligence against 911 included that: (1) the call was inappropriately designated as having "medium" priority, (2) Ms. Murphy failed to dispatch responders in a timely manner, (3) Ms. Murphy ended the call with Ms. Quinn rather than keeping her on the line and failed to timely call Ms. Quinn back, (4) Ms. Murphy was negligent in ascertaining the severity of the emergency, and (5) the communication to responders was deficient.

Upon our careful review, we conclude that all of Plaintiff's claims were effectively negated by the evidence submitted by 911. First, Ms. Murphy and other employees of 911 and the Fire Department testified unequivocally that the priority rating assigned to the call was automatically placed thereon by the computer and was not relied upon in any manner in determining the response to the call. Plaintiff provided no contrary evidence. Second, the 911 recordings and printouts show that Ms. Murphy immediately dispatched both the Fire Department and law enforcement upon obtaining the information from Ms. Quinn, which was approximately three minutes from the time the call originated. Again, Plaintiff provided no evidence to contradict this proof.

Plaintiff's third allegation is that Ms. Murphy was negligent in ending the call with Ms. Quinn rather than keeping her on the line and that Ms. Murphy failed to call Ms. Quinn back in a timely manner. 911 presented evidence, however, that its written policies and procedures did not require that all callers be kept on the line or called back unless dispatch

was requested to do so by the responders. The applicable policy provides, *inter alia*:

> It will sometimes be necessary to keep callers on the line while responders are [e]n route to a call. This will be done when an incident is in progress and the caller is able to safely provide additional information. If possible the caller will be kept on the line during in progress calls, or calls where violence has been committed or the potential for violence exists prior to responder's arrival. The caller will not be kept on the line when they refuse, when the caller no longer has visual contact with the incident, or when keeping the caller on the phone could place them in danger.

Further, both Ms. Murphy and David Nelson testified that they were not required to call back unless the responders requested that they do so. According to Mr. Nelson, the caller would only be kept on the line if there were an immediate threat to his or her safety. As he explained, in this situation such did not appear to be the case because the caller was inside the home while the perpetrator was outside.

Viewing the evidence in the light most favorable to the plaintiff and assuming, *arguendo*, that this situation should be considered an "incident in progress," which would require, pursuant to the above policy, that the caller be kept on the line, Ms. Murphy's failure to do so was not a cause in fact of Ms. Quinn's injury. As our Supreme Court has explained, "[c]ause in fact . . . deals with the 'but for' consequences of an act. 'The defendant's conduct is a cause of the event if the event would not have occurred but for that conduct.'" *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993) (quoting *McKellips v. Saint Francis Hosp.*, 741 P.2d 467 (Okl. 1987)) (in turn quoting Prosser and Keeton, The Law of Torts 266 (5th ed. 1984)). Plaintiff cannot show that Ms. Quinn's injury would not have occurred but for the alleged failure on the part of Ms. Murphy to keep Ms. Quinn on the telephone. The evidence demonstrated that once Mr. Henderson was taken into custody, firefighters immediately entered the home and found Ms. Murphy, who was unresponsive, removing her from the home. Tragically, despite receiving treatment, Ms. Murphy subsequently died from smoke inhalation. Firefighters were not allowed to enter the scene before the suspect was placed in custody. By such time, Ms. Murphy was already unresponsive and had sustained the injury that led to her death. Therefore, in this case, Ms. Murphy's failure to keep Ms. Quinn on the telephone could not have affected the outcome.

As to the fourth allegation, this Court has reviewed the 911 recording of the telephone call between Ms. Quinn and Ms. Murphy, and it is clear that Ms. Murphy acted competently and professionally in attempting to ascertain the severity of the emergency from the information provided by Ms. Quinn. Ms. Murphy repeatedly asked Ms. Quinn questions about the location of the fire to determine whether Ms. Quinn was in danger. Ms. Murphy

and her supervisor, Richee Kidd, both testified that Ms. Murphy followed 911 policies and procedures in her questioning of Ms. Quinn and her handling of the call. Plaintiff presented no countervailing evidence on this point.

Finally, Plaintiff alleged that Ms. Murphy's communications were somehow deficient. In Plaintiff's brief, it is noted that Ms. Murphy failed initially to make the Fire Department aware that Ms. Quinn chose to remain in the house. Plaintiff further alleges that Ms. Murphy should have told Ms. Quinn to leave the residence in order to keep Ms. Quinn out of danger from the fire. These claims are negated by 911's evidence.

Chief McClanahan testified in his deposition that he first became aware that Ms. Quinn was still in the residence at 8:42 p.m., some seventeen minutes after the fire department was initially dispatched. Plaintiff places significant emphasis on this fact, despite Chief McClanahan's follow-up testimony that having this knowledge earlier would have made no difference in how the Fire Department responded to the fire. Similarly, Captain Patty testified that his decision to instruct the firefighters at the scene to pull back until law enforcement arrived and had the suspect in custody would have been no different had he known someone was in the house. This proof negates an essential element of Plaintiff's claim of negligence by Ms. Murphy, as Plaintiff cannot show that any alleged delay in communicating Ms. Quinn's whereabouts to firefighters was the cause in fact of Ms. Quinn's injury.

Assuming, *arguendo*, that Ms. Murphy failed to timely communicate to firefighters that Ms. Quinn was still in the home, such a failure would not have been a cause in fact of Ms. Quinn's injury. *See Kilpatrick*, 868 S.W.2d at 598. Based on the testimony of Chief McClanahan and the affidavit of Captain Patty, an essential element of Plaintiff's claim has been negated because Plaintiff cannot show that Ms. Quinn's injury would not have occurred but for Ms. Murphy's lack of communication of Ms. Quinn's presence in the home. The firefighters testified that their response would have been the same whether or not they had knowledge that Ms. Quinn remained in the home because Mr. Henderson was still directly outside the home. As such, any lack of this knowledge was not the cause of Ms. Quinn's injury.

With regard to Ms. Murphy's alleged failure to tell Ms. Quinn to go outside, Ms. Murphy testified that she did not instruct Ms. Quinn to remain inside the residence. Ms. Murphy stated that she, in fact, was left with the impression that Ms. Quinn was going outside, although she conceded that she did not tell Ms. Quinn to do so. Ms. Kidd, Ms. Murphy's supervisor, testified that when there is a domestic situation, the dispatcher should not direct a person outside the home into danger. Likewise, Mr. Nelson also explained that 911 would not tell a caller to go outside if someone was present there whom the caller feared.

This was the situation in the case at bar. Plaintiff presented no countervailing evidence on this point.

Based on the proof presented in this matter, the trial court did not err in granting summary judgment to 911 because that party presented affirmative evidence negating essential elements of Plaintiff's claim of negligent acts by Ms. Murphy. *See* Tenn. Code Ann. § 20-16-101. We conclude that the trial court did not err in granting summary judgment to 911, albeit on different grounds. *See Cont'l Cas. Co. v. Smith*, 720 S.W.2d 48, 50 (Tenn. 1986) (holding that an appellate court will affirm a decree correct in result but rendered upon different, incomplete, or erroneous grounds).

## V. Other Issues

Having found that the governmental entities retained immunity in this case, we conclude that Plaintiff's remaining issues are pretermitted as moot.[4]

## VI. Conclusion

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE

---

[4]If immunity exists pursuant to the GTLA, the public duty doctrine is not relevant. *See Chase*, 971 S.W.2d at 385.