# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### October 12, 2011 Session

## LYNN ROGERS v. JON ROACH, ET AL.

**Appeal from the Chancery Court for Fentress County**
**No. 0968    Billy Joe White, Chancellor**

**No. M2011-00794-COA-R3-CV - Filed June 19, 2012**

Landowner owns property that was once part of a single parcel of land. The only way she can access her property is over a gravel roadway approximately nine feet wide that crosses through her neighbors' property. One of Landowner's neighbors erected fence posts near the roadway that Landowner alleges interfere with her ability to pull her horse trailers back and forth to her property. Landowner filed a complaint alleging she has the right to a forty foot easement across her neighbors' property. After Landowner presented her proof at trial, Defendant neighbors moved for involuntary dismissal pursuant to Tenn. R. Civ. P. 41.02. The trial court dismissed Landowner's complaint. We reverse the dismissal as to the Landowner's claim for interference with her use and enjoyment of the easement because she presented evidence to establish the elements of that claim. We also reverse the dismissal of the claim for damages resulting from the interference. Dismissal of the other claims by Landowner is affirmed. We remand this case for further proceedings.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the
### Chancery Court Affirmed in Part and Reversed in Part

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Matthew Allen Jared, Cookeville, Tennessee, for the appellant, Lynn Rogers.

James Frank Wilson, Wartburg, Tennessee, for the appellees, Jon Roach and wife, Brenda Roach, Roger Hill, Larry B. Daniels, Lowell D. Daniels, Wanda Brown, and Beulah Hill.

### OPINION

The parties in this case are all neighbors who live on land that was once a single parcel of property. Over time the single parcel was divided up, and a one-lane gravel

roadway crossing over some of the private property has come to provide the only ground access to the properties that do not abut a public road. None of the landowners challenges any other landowner's right to use the roadway to access his or her property. A dispute has arisen, however, regarding the width of the roadway right-of-way and whether one landowner can restrict another's use of it by placing posts next to the roadway that effectively prevent the other from pulling large horse trailers along the roadway to and from her property.

## I. BACKGROUND

In February 2005 Lynn Rogers purchased 37.4 acres of real property in Fentress County from Gerald and Patricia Reagan (collectively, "the Reagans"). Ms. Rogers' General Warranty Deed contained the following language:

> There is also conveyed a non-exclusive right-of-way over a roadway which has been used by the Grantors and their predecessors in title to access this property described as follows:
>
> Beginning at the junction of the Lowe Point Road and running eastwardly with the center line of said roadway which runs through the Larry Daniels property along the south line of the Jimmy Hill tract and through the Jon and Brenda Roach tract into the above-described tract . . . .

The roadway is a gravel roadway that provides access to Ms. Rogers' property and is used by herself and others for access to their properties. The roadway varies in width but is no less than nine feet wide at any point along its length. It curves significantly shortly before it enters Ms. Rogers' property. Ms. Rogers installed large gates across the roadway where it enters her property.

The portion of the roadway about which Ms. Rogers complains most is bounded on both sides by land belonging to Jon and Brenda Roach (collectively, "the Roaches").[1] Ms. Rogers contends "[t]here has been continuous use of this easement for the last forty-eight (48) years, which is described as a right of way forty feet in width, being twenty feet on each side of the center line of the roadway." No one disputes that the gravel roadway has been used for ingress and egress for almost fifty years.

---

[1] Ms. Rogers also named Larry Daniels, Lloyd Daniels, Roger Hill, and Wanda Brown as defendants because they owned property along the gravel roadway and she thought she was required to name them as indispensable parties. Ms. Rogers has no dispute with the Daniels or Mr. Hill with respect to her use of the easement.

However, the only evidence Ms. Rogers offered to support her claim that the roadway was forty feet wide was a handmade drawing of the gravel roadway prepared at the behest of the Reagans, her predecessors in title, in which only the center line was surveyed.

At trial, Ms. Rogers asked the Fentress County Property Assessor to interpret the handmade drawing rather than the individual who prepared it. The property assessor did not have personal knowledge of the information contained in the drawing.[2] When asked to measure the width of the roadway using the scale shown on the drawing, the property assessor responded:

> Each inch means a hundred foot. Okay. Foy done this. Okay. You put this on this on ten, which you put it like that and it's got four marks, which means forty foot. But that's just . . . . You know, I don't know nothing about it. That's just what was give to me.

When Ms. Rogers purchased her property, the Roaches had an electric fence in their yard that was about 20 feet or so from the gravel roadway. Ms. Rogers stated the electric fence was 27 feet from the center line of the roadway. Both her real estate agent and her predecessor-in-interest testified that the fence at issue in this case did not exist before or at the time of Ms. Rogers' purchase of her land and the appurtenant easement. Ms. Rogers testified about legal proceedings she had brought which resulted in the Roaches being required to fence in their dogs and livestock. After that lawsuit, the Roaches erected the fence in question at the edge of the roadway. It does not enclose anything, according to Ms. Rogers and other witnesses.

The Roaches put wooden and metal posts in the ground along the edge of the roadway on either side and ran a wire fence or a rope along each side to connect the posts. This is the fence in question in this lawsuit. Ms. Rogers testified that there are only four to five feet between the middle of the roadway and the new fence.

Ms. Rogers is in the horse business Ms. Rogers also has friends who visit her with their horses to ride on her property. She has two horse trailers that she uses to transport horses onto and away from her property. The larger trailer is ten feet wide and thirty-four feet long.

---

[2]The defendants' attorney objected to the admissibility of this document, and the court ultimately allowed it to be marked as an exhibit without explicitly ruling on whether it was admitted into evidence. We decline to rule on whether the document was properly admitted since neither party has raised that question on appeal.

Ms. Rogers testified she has been unable to use her larger trailer ever since the Roaches installed the wooden and metal posts so close to the roadway. She testified that, even with the smaller trailer, it is very difficult to negotiate the turns in the roadway due to the Roaches' fence along the roadway.

The Reagans, her predecessors-in-interest, had transported a mobile home to their property using the gravel roadway and that the home is approximately forty-five feet wide. She testified she would like to place additional mobile homes on her property for her children to use at some point in the future but that moving additional mobile homes along the road now is impossible due to all the posts the Roaches have installed along the gravel road.

One witness with experience with moving mobile homes testified that Ms. Rogers would need at least a forty foot right of way to effectively and safely move a trailer the size of her horse trailer. He clarified that she would need between thirty and forty feet of room for clearance for tail swing.

Another witness with experience in maneuvering long trailers for farm purposes had visited Ms. Rogers' property to pick up a trailer. He testified that it was difficult to maneuver his trailer on the gravel roadway because of the steel posts and fence placed by the roadway by the Roaches. He also stated that the curve of the roadway close to Ms. Rogers' gate and the steel posts caused his vehicle to leave the gravel roadway and travel on the grass. Since his trailer was smaller than that of Ms. Rogers, he testified that she would not be able to safely move her horse trailer on the curve in the gravel roadway.

Another witness testified that he observed the Roaches moving the fence closer to the gravel roadway and that the fence caused problems for him traveling in his pickup truck, especially where the roadway entered Ms. Rogers' property.

A part-time employee of Ms. Rogers testified that the Roaches' new fence bordering the gravel roadway does not does not actually enclose anything. He also stated that the new fence causes a lot of discomfort for people driving on the roadway compared to where the electric fence had been located when Ms. Rogers bought her property.

Ms. Rogers testified that she can no longer bring any big equipment onto her property because of the posts and fence erected by the Roaches at the edge of the gravel roadway. Her larger horse trailer has been parked since 2005. The centerline of the roadway was 27 feet from the Roaches' electric fence when she purchased the property, and she had plenty of room to maneuver the easement with her trailers. Because of the posts erected by the

Roaches, she has difficulty traveling the roadway because of the swing necessary to navigate the curves. She also said she cannot even use the full original graveled width of the roadway due to the fence and posts.

## II. TRIAL COURT RULINGS

Following the close of Ms. Rogers' presentation of evidence, the Roaches asked the court to dismiss Ms. Rogers' cause of action seeking to widen the gravel roadway to forty feet.[3] The trial judge granted the Roaches this relief, stating the following from the bench:

> The Court finds that there is no forty foot easement over the tracts or the property involved. The easement is the land or property that has been in common use throughout the years. This road has been established by agreement . . . and it's what it is, where it is. It does not extend forty foot. Nothing in the record indicates the road is any wider than the use. So I'm going to sustain that motion.

The Roaches then asked the court to dismiss Ms. Rogers' claim for interference with her easement. In response to this motion, the court stated:

> The Court is going to find in this case that . . . and I've looked very closely at these pictures. And I want the parties to know that I live on a farm. I live on a four hundred acre farm. I've got a lot of neighbors. I've got a lot of roads. And I've pulled cattle trailers and horse trailers all over the country. . . .

> But I know what roads are. I know what farm problems are and I know what country roads are. This is no more than a country lane. A private road. It's not a public road. It's a private road. It's what it is on the ground.

> And I've looked very carefully at these fences. None of them encroach upon the roadway itself. It's a little close in a place or two, but it's three foot off the gravel, three foot off the road.

> One or two places the fence might be a little close. The fence ought to be at least three foot off of the gravel. And this road basically is. There might

---

[3]The trial court also dismissed the defendants Ms. Rogers named as indispensable parties but with whom she had no actual complaint, *i.e.*, Larry Daniels, Lloyd Daniels, and Roger Hill.

be one or two places where it's a little closer than that.

But unfortunately, this road has been made and used for some fifty years. And the use of it now, the plaintiff is attempting to increase the burden on the defendants' property by making a wide, a much wider road.

They own that property. And it's not used for the road. It's never been used as a road. And they only have to be reasonable in setting their fences.

The picture that's very telling in this case, I think, that shows the temporary electric fence, that has absolutely nothing to do with where the road is. It is probably twenty-seven foot from the center line. But it might as well be a hundred foot. That's their temporary fence to hold horses and that's not the boundary line.

These people own up to the used portion of that road. And they're not obligated to allow any additional use. They're not obligated to allow people a place to turn around or back up. Only to come in on that property and allow the reasonable use of that easement. And a normal cattle trailer or a horse trailer can come in there with no problem.

So I find the complainant has no case. Dismiss it. . . .

In response to a question by Ms. Rogers about a particular post pictured in a photograph marked 5B that may have been less than three feet from the gravel, the court directed the Roaches to move that post.

The trial court then made the following written findings of fact:

2.   That the road in question is a private road, utilized by all the parties, but is entirely on land owned by Defendants;

3.   That said road begins at the Lowe Point Road, a county maintained public road, and runs through Defendants' lands to Plaintiff's lands;

4.   That Plaintiff has a right to use said road for ingress and egress to Plaintiff's lands and Plaintiff's right of use is not contested by Defendants;

5.   That Plaintiff's right to use said road is limited to the actual course and width of the existing road;

6. That Plaintiff has no right to use any other part of Defendant's lands;

7. That Defendants' metal fence post closest to the road as shown in Exhibit "5b" should be moved further away from the existing roadway as soon as practicable;

9. That Plaintiff's COMPLAINT should otherwise be dismissed with prejudice . . . .

Ms. Rogers appeals the trial court's judgment, contending the court erred by (1) dismissing her complaint for interference with her easement and denying her damages for such interference; (2) denying her request for a declaration that she has the right to a forty-foot wide easement across the defendants' properties; and (3) dismissing her claim for a partition fence.

## III. STANDARD OF REVIEW

By asking the court to dismiss Ms. Rogers' claims following the presentation of her proof, the Roaches were challenging the sufficiency of Ms. Rogers' proof and were essentially asking the court for an involuntary dismissal of Ms. Rogers' complaint pursuant to Tennessee Rule of Civil Procedure 41.02. This rule provides, in pertinent part:

(2) After the plaintiff in an action tried by the court without a jury has completed the presentation of plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court shall reserve ruling until all parties alleging fault against any other party have presented their respective proof-in-chief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court grants the motion for involuntary dismissal, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment.

The Tennessee Court of Appeals has addressed this rule in *Pamperin v. Streamline Mfg.*, in which it explained:

When a motion to dismiss is made at the close of a plaintiff's proof in a

non-jury case, the trial court must impartially weigh the evidence as though it were making findings of fact and conclusions of law after all the evidence has been presented. If the plaintiff's case has not been established by a preponderance of the evidence, then the case should be dismissed if the plaintiff has shown no right to relief on the facts found and the applicable law.

276 S.W.3d 428, 436 (Tenn. Ct. Ap. 2008) (quoting *Building Materials Corp. v. Britt*, 211 S.W.3d 706, 711 (Tenn.2007)).

On appeal, we review the trial court's decision to grant the Roaches' motion for involuntary dismissal pursuant to Rule 13(d) of the Tennessee Rules of Appellate Procedure. *Pamperin*, 276 S.W.3d at 436 (citing *Building Materials Corp.*, 211 S.W.3d at 711). In accordance with Rule 13(d), we review the trial court's findings of fact *de novo*, applying a presumption of correctness. We will not overturn the trial court's findings of fact unless the evidence preponderates against them. *Pamperin*, 276 S.W.3d at 436 (citing *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001)). We review the trial court's conclusions of law using a *de novo* standard with no presumption of correctness. *Pamperin*, 276 S.W.3d at 436 (citing *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993) (further citations omitted)).

### IV. EASEMENT FOR USE OF THE GRAVEL ROADWAY

The parties do not dispute that Ms. Rogers has the right to use the gravel road that passes over the individual defendants' properties for purposes of ingress to and egress from her property. Thus, they do not dispute that she has an access easement over the defendants' properties. "An easement is a right an owner has to some lawful use of the real property of another." *Cellco P'ship d/b/a Verizon Wireless v. Shelby County*, 172 S.W.3d 574, 588 (Tenn. Ct. App. 2005) (quoting *Pevear v. Hunt*, 924 S.W.2d 114, 115 (Tenn. Ct. App. 1996) (further citations omitted)). One who possesses an easement has an enforceable right to use real property that belongs to another for a specific use. *Bradley v. McLeod*, 984 S.W.2d 929, 934 (Tenn. Ct. App.1998) (citing *Brew v. Van Deman*, 53 Tenn. (6 Heisk.) 433, 436 (1871)). An easement does not confer an interest in the ownership of the underlying real property. *Star Enter. v. Warner*, 1995 WL 381652, at *4 (Tenn. Ct. App. June 28, 1995).

Easements can be created in several different ways, including by express grant, implication, prescription, estoppel, reservation, and eminent domain. *Cellco P'ship*, 172 S.W.3d at 588 (citing *Pevear*, 924 S.W.2d at 115-16) (further citations omitted). Ms. Rogers' General Warranty Deed expressly describes the right-of-way over the defendants' properties, but that deed did not create the easement.

The type of easement Ms. Rogers owns meets the definition of an easement by implication.[4] Such an easement often occurs "upon severance of a single piece of land into separately owned parts as an inference of the intention of the parties to the conveyance." *Cellco P'ship*, 172 S.W.3d at 588 (quoting *Barrett*, 1999 WL 802642, at *2); *Barrett v. Hill*, 1999 WL 802642, at *2 (Tenn. Ct. App. Oct. 7, 1999) (citing Restatement of Property § 474 (1944); *LaRue v. Greene County Bank*, 166 S.W.2d 1044, 1049 (1942)). "Implied easements are grounded in the policy 'that a grantor intends to include in a conveyance whatever is necessary for the beneficial use and enjoyment of the property conveyed.'" *Cellco P'ship*, 172 S.W.3d at 589 (quoting *Adcock v. Adcock*, 1995 WL 675852, at *4 (Tenn. Ct. App. Nov. 15, 1995)).

As stated earlier, there is no dispute that Ms. Rogers has an easement for ingress and egress over the gravel road across the property of the Roaches. The real question is the extent of that easement.

## V. DISMISSAL OF DECLARATORY JUDGMENT CLAIM

The trial court found "nothing in this record indicates that the road is any wider than the use" and dismissed Ms. Rogers' claim for a declaratory judgment that she have use and enjoyment of an easement that was forty feet wide. In this appeal, Ms. Rogers argues that the trial court erred in this dismissal. As set out in her brief, the issue specifically references "the forty (40) foot wide driveway shown on Exhibit 2." However, the argument does not address that diagram or the testimony about it.

It is axiomatic that the extent of an easement can be established by a written description in the grant of the easement. But, the evidence Ms. Rogers submitted to establish a forty foot wide easement was testimony about a handmade drawing by a person who did

---

[4]The elements necessary to create an easement by implication include:

(1) a separation of the title; (2) a necessity that, before the separation takes place, the use which gives rise to the easement shall have been so long continued and obvious or manifest as to show that it was meant to be permanent; and (3) a necessity that the easement be essential to the beneficial enjoyment of the land granted or retained; and (4) continuous, as distinguished from temporary or occasional servitude.

*Barrett*, 1999 WL 802642, at *3 (Tenn. Ct. App. Oct. 7, 1999) (citing *Johnson v. Headrick*, 237 S.W.2d 567, 570 (Tenn. App.1948); 28A C.J.S. Easements § 63 (1996)). Herein, there was evidence that when the single tract was initially divided into several tracts the prior owners/residents of the property Ms. Rogers now owns used the gravel road to access the property and that this road has been used continuously for over eighty years for this purpose.

not make the drawing and did not have any personal knowledge about the drawing or the issues in this case. Accordingly, we agree with the trial court that Ms. Rogers did not show that she was entitled to the relief she requested, *i.e.*, a declaration that she had use and enjoyment of a 40 foot easement centered on the center line of the roadway as described in a specific exhibit.

## VI. INTERFERENCE WITH EASEMENT

Ms. Rogers also asserts that the trial court erred in dismissing her claim that the Roaches had interfered with her use of the easement and her claim for damages based upon that alleged interference.[5]

In order to determine whether the Roaches have interfered with Ms. Rogers' use of the easement, we must identify the extent of that easement. The road in question varies in width, and evidence introduced at trial showed that it is nine feet wide at its narrowest point. The exact measurement of the gravel road, however, does not necessarily define the contours or extent of Ms. Rogers' easement.

### A. The Extent of the Easement

Where an easement is not specifically defined, it is limited to what is "reasonably necessary and convenient" to suit the purpose for which it was created. *Adams v. Winnett*, 156 S.W.2d 353, 358 (Tenn. Ct. App. 1941). The extent of an implied easement is determined in part by a predecessor's use of the easement:

> Unlike express easements, [easements by implication] take into account the prior use made of conveyed land. They ordain the perpetuation of that use on the general principle that property is usually passed along with its burdens and that the parties, as evidenced by their actions, understood that their property was thus conveyed. *See* Roger A. Cunningham, *et al.*, *The Law of Property* §§ 8.4-8.5 (1984); 2A James Casner, *American Law of Property* §§ 8.31-8.38 (1952).

*Bradley v. McLeod*, 984 S.W.2d at 934; *Barnett*, 1999 WL 802642, at *2.

An easement by implication is also known as an easement implied from prior use.

---

[5] Although the trial court did dismiss Ms. Rogers' complaint, it actually granted her limited relief by ordering the Roaches to move a fence post.

RESTATEMENT (THIRD) OF PROP: SERVITUDES § 2.12 (2000). Implication of an easement from a prior use is based on the protection of a purchaser's reasonable expectations that his or her use of an easement will be a continuation of her predecessor's use. *Id.; see Ingram v. Wasson*, 2011 WL 5921694, at *10 (Tenn. Ct. App. Nov. 21, 2011) ("the rule regarding easements implied from prior use is based on the assumption that people intend to buy and sell land with the existing access arrangements, and it furthers the policy of protecting the reasonable expectations and the intent of parties to such transactions").

Courts consider the reasonable expectations of purchasers of the divided parcels based on both the immediate and prior sellers' uses of the easement at issue. *See, e.g., Ingram v. Wasson*, 2011 WL 5921694, at *1-5, 10 (large parcel of land was subdivided in 1971 and court considered prior uses of right-of-way passing through subdivided lots by successive owners, following initial severance, to reach landlocked parcel); *Rhoades v. Taylor*, 2003 WL 724672, *1, 3 (Tenn. Ct. App. March 4, 2003) (court considered prior uses of successive owners of parcel at issue to determine whether easement by implication existed). Thus, prior use of an easement is important in determining the expectations of the parties and the extent of an easement.

In *Shew v. Bawgus*, 227 S.W.3d 569 (Tenn. Ct. App. 2007) this court again recited the well-accepted doctrine regarding easements:

> The range of permissible uses of any particular easement is in the first instance defined by the circumstances surrounding the creation of that easement; its use is limited to the purposes for which it was created. 28A C.J.S. *Easements* § 159 (1996).

*Shew*, 227 S.W.3d at 576 (quoting *Cellco P'ship*, 172 S.W.3d at 595).

The *Shew* court explained that "[w]here an easement is not specifically defined, it need be only such as is reasonably necessary and convenient for which it was created." 227 S.W.3d at 577 (quoting *Burchfiel v. Gatlinburg Airport Auth.*, 2006 WL 3421282, at *3 (Tenn. Ct. App. Nov. 28, 2006) (further citation omitted)). "If the location of an easement cannot be ascertained by the language of the instrument or the surrounding circumstances, the use of the way fixes the location." *Shew*, 227 S.W.3d at 577 (quoting *Fanning v. Wallen*, 2001 WL 950001, at *6 (Tenn. Ct. App. Aug. 21, 2001)).

In other words, "[t]he extent of an easement is also determinable by its nature and use. *Carroll v. Belcher*, 1999 WL 58597, at *5 (Tenn. Ct. App. Feb. 9, 1999).

The evidence in the case at bar suggests that the gravel roadway has been used for

ingress to and egress from the land currently owned by Ms. Rogers for nearly fifty years and that its location has not changed in that time. Testimony showed that the Reagans, the predecessors-in-interest to Ms. Rogers, had transported a mobile home about forty-five feet wide along the gravel road easement. It also established that the easement and the land around it are rural and that agricultural activities are common in the area.

**B. Burdens and Limitations on Both Owner of Easement and Owner of Underlying Property**

It is well settled that an easement carries rights and restrictions applicable to the owner of the easement (the dominant estate) and the owner of the property underlying and adjoining the easement (the servient estate).

> Although the rights of the easement owner are paramount, to the extent of the easement, to those of the landowner, the rights of the easement owner and of the landowner are not absolute, irrelative, and uncontrolled, but are so limited, each by the other, that there may be a due and reasonable enjoyment of both the easement and the servient estate.

*Carroll v. Belcher*, 1999 WL 58597, at *1 (Tenn. Ct. App. Feb. 9, 1999) (quoting 10 TENNESSEE JURISPRUDENCE, *Easements* § 6 (1994)).

Because an easement is limited to the purposes for which it was created, an owner of an easement "cannot materially increase the burden of it upon the servient estate or impose thereon a new and additional burden." *Adams v. Winnett*, 156 S.W.2d at 357 (quoting 17 AM. JUR. 996, sec.98).

> In other words, an easement appurtenant to a dominant tenement can be used only for the purposes of that tenement; it is not a personal right, and cannot be used, even by the dominant owner, for any purpose unconnected with the enjoyment of his estate. The purpose of this rule is to prevent an increase of the burden upon the servient estate, and it applies whether the easement is created by grant, reservation, prescription, or implication. 9 R.C.L., 786, sec. 43; Jones on Easements, secs. 99 and 100.
>
> A principle which underlies the use of all easements is that the owner thereof cannot materially increase the burden of it upon the servient estate, nor impose a new and additional burden thereon . . .

*Shew v. Baugus*, 227 S.W.3d at 576-77 (quoting *Cellco P'ship*, 172 S.W.3d at 596 (quoting *Adams v. Winnett*, 156 S.W.2d at 357)).

On the other hand, the owners of the land under and surrounding an easement also have restrictions on the use of their land:

> The owner of the servient estate, while he may use his property in any manner

-13-

consistent with the existence of the easement, . . . cannot make any alterations in his property by which the enjoyment of the easement will be materially interfered with.

28A C.J.S. *Easements* § 175 (1996).

The owner of the servient estate has no legal right to interfere with an easement holder's enjoyment and use of the easement. *Charles v. Latham,* 2004 WL 1898261 (Tenn. Ct. App. Aug. 25, 2004) (citing *Cooper v. Polos*, 898 S.W.2d 237, 242 (Tenn. Ct. App. 1995)).

Although the respective rights of the owners of the dominant and servient estates must be construed so as not to **unreasonably** interfere with each other, *Miller v. State*, 124 Tenn. 293, 137 S.W. 760, 35 L.R.A.N.S., 407 (1910), the owner of the dominant easement has **all the rights incident or necessary to proper enjoyment of the easement**. 25 Am.Jur.2d Easements & Licenses §§ 72-75. The use of the servient estate must be consistent with that of the dominant estate. *Brown v. Alabama Power Co.*, 275 Ala. 467, 156 So.2d 157 (1963).

*U.S. ex rel. and for Use of Tennessee Val. Authority v. Hughes*, 408 F.2d 619, 621(6th Cir. 1969) (emphasis added).

In Tennessee, the rights of the owner of the easement are paramount to those of the landowner, at least to the extent of the easement. *Cox v. East Tennessee Natural Gas Co.*, 136 S.W.3d 626, 627-28 (Tenn. Ct. App. 2003); *Carroll v. Belcher*, 1999 WL 58597, at *3. The owner of the servient estate cannot take actions that unreasonably interfere with easement holder's rights under the easement, including any alterations in the landowner's property. *Cox*, 136 S.W.3d at 628 (citing *Carroll v. Belcher*, 1999 WL 58597, at *3).

Thus, the Roaches could not take actions on their own land that interfered with the reasonable use of Ms. Rogers' access easement across their property.

**C. Interference with Reasonable Use of Easement**

Claims of interference with the use of an access easement have often involved the erection of gates or fences, sometimes on the easement itself and sometimes adjoining it. Generally, the question in such situations is whether, under the specific facts presented, the fence or gate is necessary to the use and enjoyment of the landowner's land and whether it does not unreasonably interfere with the easement holder's use of the right of way. *Reynaud*

*v. Koehler*, 2005 WL 1868816, *2 (Tenn. Ct. App. Aug. 8, 2005). For example, "an owner of land subject to a right-of-way easement may maintain gates, if necessary to his use and enjoyment and where such obstructions do not unreasonably interfere with the use of the way." *Cole v. Dych*, 535 S.W.2d 315, 320 (Tenn. 1976).

The rule is the same for fences abutting the easement. Such a fence may be erected if it is necessary for the use and enjoyment of the servient estate and if it does not unreasonably interfere with the dominant estate owner's rights to use of the easement. *Ogle v. Trotter*, 495 S.W.2d 558, 564 (Tenn. Ct. App. 1973); *Gammo v. Rolen*, 2010 WL 2812631 (Tenn. Ct. App. July 19, 2010) (perm. app. denied Dec. 7, 2010); *Albright v. Tallent*, 2010 WL 1905028, at *2 (Tenn. Ct. App. May 12, 2010); *Hughes v. Poulton*, 2005 WL 2777346, at *3, 5 (Tenn. Ct. App. Oct. 25, 2005). Stated another way,

> [T]he right of an owner of the fee to fence an easement . . . is, to a large extent, dictated by practical need to erect such a fence . . . and the reasonableness of such action in light of the use which is made of the property traversed by the easement.

*Ogle v. Trotter*, 495 S.W.2d at 564.

As this court has explained, courts in this state have ordered removal of a fence abutting or on a right-of-way easement when "there has been a showing that the fence interfered with the use of the easement in some way." *Gammo v. Rolen*, 2010 WL 2812631, at * 2.

In *Carroll v. Belcher*, *supra*, the owners of an easement providing access to their landlocked property took it upon themselves to widen the easement without obtaining the permission of the owner of the land across which the easement lay. The landowner erected fence posts along the easement's historical boundaries. 1999 WL 58597, at *1. The owners of the easement filed a petition for a temporary and permanent restraining order preventing the owner of the servient estate from interfering with their use of the easement, complaining that the fence posts restricted their entry and exit to and from their property and was causing damage to the vehicles using the easement. *Id*. Quoting 28(A) CJS Easements, § 175 (1996), the court stated:

> The owner of the servient . . . estate cannot make any alterations in his property by which the enjoyment of the easement will be materially interfered with.

*Carroll v. Belcher*, 1999 WL 58597, at *5.  This court found that placing fence posts on the border of the easement

> . . . materially interfere[d] with the use of the easement by the owners of the dominant estate.  The terrain over which the easement runs is wooded, and the easement is not straight.  This makes it somewhat difficult in close quarters to drive a vehicle without striking the fence.

*Id*.  We modified the trial court's judgment permitting the owners of the easement to widen the easement itself, and instead directed the court to order the owner of the underlying property to move his fence posts far enough away from the easement to allow the owners of the dominant estate to travel along the easement without hitting the fence posts.[6]  *Id*.

In *Gammo v. Rolen*, 2010 WL 2812631, this court found, as had the trial court, that the fence at issue was not necessary to the landowners' use and enjoyment of their land and "served no real purpose other than to mark the property line."  *Id*. at *2.  The trial court had found that the fence was not erected for the purpose of containing dogs, as the landowner claimed, but rather was actually more of a "spite fence."  *Id*.  The fence interfered with the easement holder's use of the easement, completely blocking access to it.  This court affirmed the trial court's order that the fence be removed, but modified the trial court's injunction, holding that "as long as plaintiff has reasonable access the defendants should not be enjoined from constructing a fence in the future on their property line, so long as the fence does not impair an easement."  *Id*.

Determining the reasonableness of the interference requires consideration of all the circumstances, including the purpose and reasonable use of the easement and the landowners' reasons for installing the fence.  *Hughes*, 2005 WL 2777346, at *4.

Additionally, as we said in *Regen v. East Fork Farms, LP*, 2009 WL 3672788 (Tenn. Ct. App. Nov. 4, 2009):

> Except as limited by the terms of the servitude ..., the holder of
> an easement ... is entitled to use the servient estate in a manner
> that is reasonably necessary for the convenient enjoyment of the

---

[6]The court in *Carroll* determined that the fence posts should be at least two feet away from the ten-foot easement to accommodate the dominant estate owners' needs.  Unlike this case, however, there was no evidence presented in *Carroll* that the owners of the landlocked property had large trailers that required more than two feet of air space outside of the easement to negotiate the turns in the easement or evidence regarding curves in the access road requiring greater clearance.

servitude. The manner, frequency, and intensity of the use may change over time to take advantage of developments in technology and to accommodate normal development of the dominant estate or enterprise benefitted by the servitude. Unless authorized by the terms of the servitude, the holder is not entitled to cause unreasonable damage to the servient estate or interfere unreasonably with its enjoyment.

*Id*. at *3 (quoting Restatement (Third) of Prop.: Servitudes § 4.10 (2000)). The *Regen* court continued:

Generally, "an increase in traffic over an easement in the process of normal development of the dominant estate, in and of itself, does not overburden a servient estate." *Weeks v. Wolf Creek Indus., Inc.*, 941 So.2d 263, 272 (Ala. 2006) (emphasis in original); *see also Stew-Mc Development, Inc. v. Fischer*, 770 N.W.2d 839, 847 (Iowa 2009); *Gutcheon v. Becton*, 585 A.2d 818, 822 (Me. 1991); *Downing House Realty v. Hampe*, 127 N.H. 92, 497 A.2d 862, 865 (N.H. 1985); *Shooting Point, L.L.C. v. Wescoat*, 265 Va. 256, 576 S.E.2d 497, 503 (Va. 2003); Restatement (Third) of Prop., § 4. 10, cmt f. The increase in traffic is merely an increase in the degree of the burden, not an additional burden. *Shooting Point, L.L.C.*, 576 S.E.2d at 503.

*Id*.

### D. Dismissal of the Interference Claim

We conclude that Ms. Rogers presented evidence establishing the necessary elements of a claim for interference with her use and enjoyment of her easement, thus making dismissal of that claim inappropriate under Rule 41.02.

When she purchased the property, the fence at the edge of the roadway did not exist. She had no problem maneuvering the roadway with her trailers, nor did others using the roadway to access her property, until the Roaches erected the posts and fence. Operating a horse business, having friends visit with horse trailers, receiving deliveries, and having other farm work done by large equipment are all reasonable uses of her property. So is placing other mobile homes on her property. Ms. Rogers purchased her particular property in order to ride her horses and invite friends to ride their horses on her property. Transporting horses to and from Ms. Rogers' property in trailers properly designed to carry horses is a necessary incident to her enjoyment of her property. Additionally, the prior owner of her property had moved a mobile home onto the property using the gravel roadway.

Ms. Rogers presented evidence that the posts of the fence erected by the Roaches are too close to the easement or roadway to allow her to make reasonable use of her property. There was evidence that the posts prevent her from using her large horse trailer or from hauling a mobile home across the access easement. Additionally, the evidence established that the posts made maneuvering other vehicles or trailers across the roadway difficult.

The Roaches did not present evidence. However, Ms. Rogers presented evidence that the fence does not actually enclose anything and was a response to prior legal action.

We, therefore, reverse the trial court's dismissal of the claim for interference with easement and remand this case to the trial court for further proceedings.[7]  After those proceedings, including the presentation of defendants' proof, the trial court shall determine, consistent with this opinion, the appropriate distance the fence posts should be moved away from the easement so as to allow Ms. Rogers the space necessary for her to negotiate the turns in the gravel roadway with her horse trailers, friends' trailers, delivery trucks, and, potentially, mobile homes.

Because the trial court dismissed the interference claim, it did not reach the issue of whether Ms. Rogers is entitled to recover damages for the Roaches' interference.

The type of injury that may be sustained from a wrongful interference with the easement, includes injury to the land itself and diminution of the easement holder's use and enjoyment of his own property, or the use of the easement. *Rector v. Halliburton*, 2003 WL 535924, *10 (Tenn. Ct. App. 2003), (citing *Expressway Assoc. II v. Friendly Ice Cream Corp.*, 590 A.2d 431, 433 (Conn. 1991)).

## VI. CLAIMS AGAINST MS. BROWN

In addition to contending the Roaches have interfered with her use of the easement, Ms. Rogers contends Wanda Brown has interfered with her use of the roadway by erecting a chain link fence at the junction of Lowe Point Road and the gravel roadway that is at the center of this dispute. Lowe Point Road is a public county road leading to the gravel roadway. Ms. Brown owns property at the corner of Lowe Point Road along one side of the gravel roadway. The gravel roadway passes next to rather than across her property.

---

[7]In its Final Decree the trial court ordered the Roaches to move the metal fence post photographed in Exhibit 5B "further away from the existing roadway as soon as practicable." By ordering the Roaches to move this metal fence post, the court implicitly found that at least this post was interfering with Ms. Rogers' use of her easement.

Photographs in the record that were marked as exhibits during the trial show Ms. Brown's fence running along Lowe Point Road and then turning to follow the curve of the easement where the gravel roadway meets Lowe Point Road. The fence passes just outside two large trees on Ms. Brown's property and continues along the gravel roadway before veering away from the easement once it is beyond the second large tree.

Ms. Rogers apparently objects to the fence where it turns from Lowe Point Road and runs alongside the easement. She argues in her brief that she does not have sufficient swing room for her horse trailers. However, she testified at trial that while she has to get close to the chain link fence when she turns in, she is able to maneuver a sixteen foot flatbed trailer back and forth to her property. One of Ms. Rogers' witnesses who is in the mobile home moving business testified on cross-examination that if he were pulling a large trailer the chain link fence would not make it difficult for him to turn onto the gravel roadway from the county road. Another of Ms. Rogers' witnesses testified that the gravel roadway is about twenty feet wide where it joins Lowe Point Road and is probably the widest part of the roadway.

The trial court did not make an express finding of fact with regard to Ms. Rogers' complaint with regard to Ms. Brown's chain link fence. "[I]f the trial judge has not made a specific finding of fact on a particular matter, we will review the record to determine where the preponderance of the evidence lies without employing a presumption of correctness." *Nashville Ford Tractor v. Great American Ins. Co.*, 194 S.W.3d 415, 424 (Tenn. Ct. App. 2005) (citing *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997)). Our review of the record shows that Ms. Rogers has failed to prove her claim against Ms. Brown because she has not shown how Ms. Brown's fence encroaches on her use of the roadway. We therefore affirm the trial court's judgment dismissing Ms. Rogers' complaint against Ms. Brown.

## VII. PARTITION FENCE

In addition to her claims about the easement, Ms. Rogers asserts there is a partition fence in need of repair located on the boundary line separating her property from the Roaches' property. In her complaint, Ms. Rogers asks that the Roaches share in the expense of replacing and/or repairing this fence pursuant to Tenn. Code Ann. §§ 44-8-202 and 44-8-206. At trial she testified that the fence was erected with the Roaches' permission by her predecessor, Ms. Reagan, to serve as a boundary/partition fence. Ms. Rogers contends that the fence has fallen into disrepair and needs to be fixed or replaced to prevent the Roaches' animals from trespassing onto her property. Neither Mr. Roach nor Mrs. Roach testified at the trial, and Ms. Reagan did not testify with respect to the partition fence.

Following Ms. Rogers' presentation of evidence, the Roaches moved the court to

dismiss Ms. Rogers' cause of action regarding the partition fence. They argued Ms. Rogers failed to prove there was ever an agreement between Ms. Reagan and the Roaches regarding the erection, repair, or replacement of the partition fence, and Ms. Rogers therefore had no basis on which to pursue her claim. The court granted the Roaches' motion with regard to the partition fence.

Ms. Rogers relies on Tenn. Code Ann. §§ 44-8-202 and 44-8-206 in support of her argument that the Roaches are responsible for a portion of the cost to repair and/or replace the partition fence between the two properties. Tenn. Code Ann. § 44-8-202 provides:

> Partition fences may be erected and repaired at the expense, jointly, of the occupants or owners; or if a person makes a fence a partition fence, by joining to it or using it as such, that person shall pay to the person erecting it that person's proportion of the expense.

Ms. Rogers failed to introduce into evidence any support for her claim regarding what she refers to as a partition fence. She testified that there is a fence on the boundary line between her property and the Roaches' property that is in need of repair and/or replacement, but she did not establish how the fence came to be where it is, much less that the Roaches are liable for its repair or replacement. The other statute Ms. Rogers relies on, section 44-8-206, addresses the need to rebuild or repair a partition fence. In light of the fact that Ms. Rogers failed to establish the Roaches' liability for repairing or replacing the fence, this statute does not come into play.

The trial court did not make a specific finding of fact with regard to Ms. Roger's claim regarding a partition fence, but our review of the record shows the evidence preponderates in favor of the trial court's dismissal of this claim because Ms. Rogers failed to prove the Roaches have any liability with respect to the fence. *See Nashville Ford Tractor*, 194 S.W.3d at 424 (appellate court reviews evidence to determine preponderance of the evidence where trial court does not make a specific finding of fact).

## VIII. CONCLUSION

For the reasons stated above, we affirm the trial court's judgment dismissing Ms. Rogers' complaint against all of the defendants other than the Roaches, and we affirm the dismissal of the declaratory judgment action. We reverse the dismissal of the interference with easement claim and its attendant claim for damages resulting from interference. We remand the case to the trial court for further proceedings consistent with this opinion. We affirm the trial court's dismissal of Ms. Rogers' claim with respect to what she terms a partition fence.

Costs of this appeal shall be divided equally between the appellant, Lynn Rogers, and the appellees, Jon Roach and his wife, Brenda Roach, for which execution shall issue if necessary.

_____

PATRICIA J. COTTRELL, JUDGE